## STEPHENS *v.* CENTRAL OF GEORGIA RAILWAY CO.

All of the evidence submitted by the plaintiff being considered, his right to a recovery was a question for determination by the jury; and the court should have submitted the case to the jury under proper instructions, instead of granting a nonsuit.

JANUARY 13, 1916.

Action for damages. Before Judge Park. Wilkinson superior court. October 6, 1914.

M. R. Stephens brought suit to recover damages from personal injuries which he alleged he received while he was in the service of the defendant company as a flagman on a freight-train, when he stepped from the caboose of the train into a ravine below a trestle, upon which the train was standing, in his attempt to alight from the caboose for the purpose of going back and changing a switch, he being at the time under the direction and control of the conductor of the train, and the order to change the switch having been given by the conductor in order that the train might be backed into a siding. He further alleged, that at the time of receiving the order he was in the caboose copying some way-bills, as he had been directed to do by the conductor. It was night and very dark. Going from a lighted caboose into the darkness and rain, he was blinded; and before dismounting from the train he swung his lantern from the car, and believing there was solid ground beneath him about two feet from the caboose (and from the light of the lantern he was unable to discover otherwise), and having had but little experience on said line of road, and not being familiar with the location, he alighted from off the step into an opening 18 feet deep, spanned by a trestle, and was thereby severely injured. He alleged that the defendant was negligent, in that the conductor ordered petitioner to step off the caboose at the place where it was standing, when the conductor knew or by the exercise of ordinary

care he could have known that there was a ravine or opening under the caboose, and knew that petitioner was a new man on the line of road and unacquainted with the place where he was ordered to step out, and that he could not discover the opening with the lantern with which he had been provided; and in that the conductor ordered petitioner to go immediately and quickly from the caboose where it stood over the ravine, without warning him of the peril or affording him an opportunity to discover it. The allegations of the petition were put in issue by the defendant's answer.

Testimony was introduced tending to show, that the plaintiff received personal injuries of a serious character; that he was employed as a flagman, as alleged, was engaged in copying way-bills in the caboose on the night when he was injured, and was ordered by the conductor to leave the caboose, it being then a dark, rainy night. The plaintiff testified, that when they stopped at Lewiston (the station at which he was injured) the conductor "called several times after he stopped and had started away, stopped again and called several times, and I went to the rear platform of the caboose and answered him, and he told me to open up the switch quick. When I received that order I swung my lantern around two or three times. It was lighted and hit the grab-iron." The lantern went out. When the plaintiff swung his lantern it looked as if it was solid ground beneath the caboose, and he went on down the steps, stepped off, and fell into a trestle. Before he fell he looked toward the front of the train and saw a little distance from him a lighted lantern which the conductor was holding. He was on the ground at the time, and close to the trestle, a short way off. The trestle was 250 feet long. The plaintiff described minutely the character of the place at which he fell, and the character of the injuries he received. He testified that the conductor ordered him to get off and open up the switch in order that the train might get back into the side-track. The conductor spoke in a loud tone, according to plaintiff's testimony, and ordered the latter to quickly open up the switch. At the time of the accident the plaintiff had been working for the defendant company since August, 1911; prior to that he had worked for the same company on another division for nearly a year in the capacity of flagman; went over this division of the road in the early part of August, 1911, and was injured on November 8, 1911; had been numerous times over the place where

he was injured. At the conclusion of the plaintiff's evidence the court granted a nonsuit upon motion; and the plaintiff excepted.

*A. R. Wright* and *Evans & Evans,* for plaintiff.

*H. W. Johnson,* for defendant.

BECK, J. (After stating the foregoing facts.) We are of the opinion that the court erred in granting a nonsuit. When this case was here before (*Central Ry. Co.* v. *Stephens,* 141 *Ga.* 645, 81 S. E. 900), the evidence being substantially the same as it is now (excepting certain illegal evidence on account of the admission of which over objection the case was remanded for a new trial), it was held: "Whether or not the case made by the evidence introduced by the plaintiff was sufficient to withstand a motion for a nonsuit without the admission of the evidence referred to in the preceding headnote, with such evidence admitted for the purpose of showing notice to the conductor of the dangerous situation of the flagman, in connection with evidence of an order on his part for the flagman to leave the cab to set the switch, the case was clearly one in which the refusal of a nonsuit was proper." The evidence which this court held to be illegal and inadmissible was, as the plaintiff testified, a remark made by the conductor in the hearing of the injured flagman to a third person: "I told you I would stop the cab on the trestle and Stephens [the plaintiff] would walk out and kill himself." This evidence, of course, was not introduced on the last trial; and the question is whether or not, with the ruling before us that under the evidence on the former trial a nonsuit should not have been granted, it was proper to grant a nonsuit under practically the same evidence, with the objectionable statement just quoted eliminated.

That which rendered material the remark of the conductor, now eliminated from the record, was the light shed by it upon the question of the conductor's knowledge of the dangerous place at which the cab had stopped. But we are of the opinion that, with this remark eliminated, it was still a question for the jury to decide whether the conductor knew that the locality was dangerous. The element of knowledge on the part of the conductor of the dangerous situation of a person attempting to alight from the cab was still an element in the case. It was not eliminated by the elimination of the remark attributed to the conductor by the flagman in his testimony. The elimination of that remark might

have had the effect of weakening the evidence of the conductor's knowledge of the situation, but it still left circumstances which the jury could consider in passing upon the question as to whether the conductor did actually know that the caboose had stopped over the trestle. While there is no direct evidence that the conductor knew of the situation, the jury might have inferred that the fact of his being the conductor of the train and passing over the trestle gave him a knowledge of the character of the situation or made his ignorance of it negligence. If he did know of the location of the caboose at the time he ordered the flagman to leave it, the case would be the same as it was with the objectionable remark of the conductor in evidence. We are therefore of the opinion that the court should have submitted the case under proper instructions to the jury, and that it was error to grant a nonsuit.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*